UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Alfredo Jose Jimenez

     v.                        Civil No. 25-cv-326-LM-AJ
                                  Opinion No. 2025 DNH 107 P

FCI Berlin, Warden et al


## O R D E R

Petitioner Alfredo Jose Jimenez brings an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his immigration detention violates the Immigration and Nationality Act ("INA") as well as his due process rights. The court directed the parties to brief Jimenez's entitlement to a bail hearing in this court pursuant to this court's inherent authority to order the release of habeas petitioners. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132, 144 (D.N.H. 2020). A hearing on that question was held on today's date. At that hearing, the court ruled from the bench that Jimenez was entitled to a bail hearing in this court and explained that a written order detailing the court's reasoning was forthcoming. This is that order.

## STANDARD OF REVIEW

"[A] district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam). "In the First Circuit, a court may grant bail to a habeas petitioner if: (1) the petitioner has a clear case on the

law and facts, or (2) exceptional circumstances are present and the petitioner

demonstrates a substantial claim of constitutional error." Gomes, 460 F. Supp. 3d at

144. Exceptional circumstances are those "that make the grant of bail necessary to

make the habeas remedy effective." Mapp v. Reno, 241 F.3d 221, 230 (2d Cir. 2001)

(quoting Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir. 1981)); see, e.g., Gomes, 460

F. Supp. 3d at 144 (possibility of high-risk detainees contracting and dying from

COVID-19 at the onset of the pandemic constituted exceptional circumstances

necessitating bail hearings because petitioners could die from COVID-19 before a

writ of habeas corpus could be granted). Here, it does not appear that release on

bail is necessary to preserve the efficacy of the habeas remedy. Thus, to obtain a

bail hearing, Jimenez must show that he has a clear case on the law and facts.

## BACKGROUND[1]

I.    <u>Factual Background</u>

Jimenez is a Venezuelan national who has participated in protests and

demonstrations against the Maduro government. Due to fears that the government

would retaliate against him for his political activities, he fled Venezuela for the

United States in 2023. Customs and Border Protection encountered Jimenez in

Eagle Pass, Texas on August 16, 2023. Officers determined that Jimenez had

unlawfully entered the United States from Mexico. They detained him, placed him

---

[1] The following facts are drawn from Jimenez's first amended petition and the attachments thereto (doc. no. 11), as well as the attachments to the government's supplemental brief (doc. no. 13).

in expedited removal proceedings, and scheduled him for a credible fear interview with an asylum officer.

The asylum officer determined that Jimenez lacked a credible fear of persecution and issued an order of expedited removal. Jimenez appealed the asylum officer's determination that he lacked a credible fear of persecution to an immigration judge ("IJ"). On August 27, 2023, the IJ issued an order reversing the asylum officer's determination and concluding that Jimenez had established a significant possibility of eligibility for asylum and withholding of removal under the INA and the Convention Against Torture. Accordingly, the IJ vacated the order of expedited removal and remanded Jimenez's case to the Department of Homeland Security ("DHS") for further consideration of Jimenez's application for asylum or for commencement of standard removal proceedings under 8 U.S.C. § 1229a.

That same day, DHS issued Jimenez a "Notice to Appear" in removal proceedings under § 1229a. The Notice alleged that Jimenez is subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i), which provides that a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

DHS thereafter released Jimenez from detention. Pursuant to an "Order of Release on Recognizance" dated August 28, 2023, DHS released Jimenez "on [his] own recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226. Doc. no. 13-3 at 1.

Once released, Jimenez traveled to New York to live with his cousin. He filed his application for asylum, withholding of removal, and protection under the Convention Against Torture in or around January 2024. In July 2024, he applied for and obtained a work permit; he did not work prior to obtaining his permit. After obtaining his work permit, Jimenez began working, primarily in construction, and paying and filing his taxes. He found temporary employment in Florida in February 2025 and relocated there for the duration of his employment. Jimenez has complied with all ICE check-ins and attended all of his court dates. He has no criminal record in this country or elsewhere.

On July 14, 2025, Jimenez attended a routine hearing before the New York City immigration court. He informed the court of his asylum application and work permit, and asked for more time to find an attorney. The court scheduled his case for a further hearing in September 2026.

Unbeknownst to Jimenez, that same day, DHS had issued a warrant for his arrest "pursuant to section[ ] 236 . . . of the Immigration and Nationality Act," which, once again, is codified at 8 U.S.C. § 1226. Doc. no. 13-6 at 1. As Jimenez exited the courtroom, ICE agents arrested him without warning pursuant to that warrant. Jimenez expressed his confusion to the officers because he had just finished his hearing without any issues and he had a work permit and identification. The officers simply confirmed Jimenez's identity and informed him "that everyone was going to be arrested that day." Doc. no. 11-1 ¶ 15.

ICE thereafter brought Jimenez to their office in New York City. An ICE officer told Jimenez that he would be detained. When Jimenez asked him why, the officer said only that Jimenez had entered the country unlawfully. Jimenez was then placed in a small room where approximately fifty other people were being held. He was confined in this room for three days. He slept on the floor and was given food twice a day, but no toiletries. Jimenez was scared "because a lot of people in the room were screaming and crying." Doc. no. 11-1 ¶ 17.

After three days, Jimenez was transported to the Wyatt Detention Center in Rhode Island. In August 2025, he was transferred to FCI-Berlin in New Hampshire. He has not been provided a bond hearing before an IJ since his arrest on July 14, 2025.

II.    Procedural Background

Jimenez, through counsel, filed his original habeas petition in this court on August 28, 2025. His original petition did not include a claim that his detention without a bond hearing before an IJ violates the INA.

On August 29, the court held a status conference and set an expedited briefing schedule regarding Jimenez's entitlement to a bail hearing in this court pursuant to this court's inherent authority to release habeas petitioners. The court also scheduled a hearing on that question for September 4. The parties filed their briefs on September 3.

After receiving the parties' briefs on September 3, the court issued an order continuing the hearing to September 8 and granting Jimenez leave to amend his

§ 2241 petition. Specifically, the court granted Jimenez leave to add a claim that his detention without a bond hearing before an IJ lacks statutory justification because 8 U.S.C. § 1226 is the statute under which he is presently detained and that statute's implementing regulations entitle him to a bail hearing. The court also directed the parties to submit further briefing on that new claim by September 5 and asked the parties to develop the factual record by submitting documents supporting their contentions.

Jimenez filed his amended § 2241 petition on September 4. The amended petition contains three counts:

- Count I: Jimenez's present detention violates 8 U.S.C. § 1182(d)(5)(A).

- Count II: Jimenez's present detention without being afforded a bail hearing before an IJ violates 8 U.S.C. § 1226(a).

- Count III: Jimenez's present detention violates his substantive due process rights because his detention serves no legitimate government purpose.

The parties filed their supplemental briefs regarding Jimenez's § 1226 claim on September 5. The court heard oral argument today on Jimenez's entitlement to a bail hearing in this court. At that hearing, the court issued an oral ruling that Jimenez had a clear case on the law and facts with respect to Count II of his amended petition and that he was therefore entitled to a bail hearing in this court.[2] The court explained that a written order detailing the court's reasoning would be

---

[2] Jimenez conceded at the hearing that his claim under Count I lacked merit and was subject to dismissal.

forthcoming. That bail hearing commenced immediately thereafter, and the court determined that the government failed to prove that Jimenez posed a danger to the community or a flight risk. Accordingly, the court ordered Jimenez released on bail.

## DISCUSSION

As noted, to obtain a bail hearing in this court, Jimenez must show that he has a clear case on the law and facts. With respect to Count II, Jimenez argues that he has a clear case on the law and facts that the statutory basis for his present detention is 8 U.S.C. § 1226(a), and that he is entitled to a bail hearing before an IJ pursuant to that statute and its implementing regulations. Because he has not been afforded a bail hearing before an IJ since the time of his arrest in July 2025, Jimenez contends that his present detention violates § 1226(a). The government responds that the statute governing Jimenez's present detention is 8 U.S.C. § 1225(b), which mandates Jimenez's detention and renders him statutorily ineligible for a bond hearing before an IJ.

The court concludes that § 1226(a), and not § 1225(b), governs Jimenez's present detention, such that he has a clear case on the law and facts with respect to Count II.[3] The court's analysis begins with an overview of the relevant statutory scheme.

---

[3] Given this conclusion, the court need not consider whether Jimenez has a clear case on the law and facts with respect to Count III of his amended petition.

I.    <u>The Relevant Statutory Scheme</u>

"Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens who are "present in the country" despite being "inadmissible at the time of entry." Jennings v. Rodriguez, 583 U.S. 281, 288-89 (2018). "[O]nce inside the United States . . . the default rule" is set forth in § 1226(a): "The Attorney General may issue a warrant for the arrest and detention of [a noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Id. at 288 (quoting § 1226(a)). Following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." § 1226(a)(1)-(2). "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Section 1225(b), by contrast, "applies primarily to [noncitizens] seeking entry into the United States." Id. at 297. Detention under § 1225(b) may be pursuant to subsection (b)(1) or (b)(2).

Section 1225(b)(1) applies to noncitizens "arriving in the United States." § 1225(b)(1). "If an immigration officer determines that [a noncitizen] who is arriving in the United States . . . is inadmissible" because the noncitizen has made misrepresentations or lacks valid documentation, "the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear

of persecution." § 1225(b)(1)(A)(i). If the noncitizen indicates an intention to apply for asylum or a fear of persecution, "the officer shall refer the [noncitizen] for an interview by an asylum officer." § 1225(b)(1)(A)(ii). The asylum officer "shall conduct" these interviews "either at a port of entry or at such other place designated by the Attorney General." § 1225(b)(1)(B)(i). "If the officer determines at the time of the interview that [the noncitizen] has a credible fear of persecution . . . [the noncitizen] shall be detained for further consideration of the application for asylum."[4] § 1225(b)(1)(B)(ii).

"[I]f the officer determines that [the noncitizen] does not have a credible fear of persecution, the officer shall order the [noncitizen] removed from the United States." § 1225(b)(1)(B)(iii)(I). The noncitizen may appeal this determination to an immigration judge for "prompt review," which "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date" that the asylum officer determined the noncitizen lacked a credible fear of persecution. § 1225(b)(1)(B)(iii)(III). The noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV).

Section 1225(b)(2) applies to a "an applicant for admission" who is "seeking admission" and whom an "examining immigration officer" determines during an

---

[4] "Credible fear of persecution" is defined as "a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in support of the [noncitizen's] claim and such other facts as are known to the officer, that the [noncitizen] could establish eligibility for asylum." § 1225(b)(1)(B)(v).

"inspection" is not "clearly and beyond a doubt entitled to be admitted."

§ 1225(b)(2)(A). If the "examining immigration officer" finds pursuant to her

"inspection" that the "applicant for admission" is "seeking admission" but is not

"clearly and beyond a doubt entitled to be admitted," then "the [noncitizen] shall be

detained for a proceeding under section 1229a," the statute governing standard,

non-expedited removal proceedings. Id.

      In summary, "noncitizens detained under Section 1225(b)(2) must remain in

custody for the duration of their removal proceedings, while those detained under

Section 1226(a) are entitled to a bond hearing before an IJ." Rodriguez v. Bostock,

779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

II.    <u>Jimenez Has a Clear Case on the Law and Facts That He Is Entitled to a
Bond Hearing Under Section 1226(a)</u>

      As of the time of his arrest in July 2025, Jimenez had been living in the

United States for nearly two years pursuant to a grant of conditional parole under

§ 1226(a). The government nevertheless argues that his present detention is

mandated by § 1225(b)(1) because he remains an "applicant for admission," insofar

as that phrase is defined to include any noncitizen "present" in the country "who

has not been admitted." § 1225(a)(1). The government submits that "[s]ection 1225

is the applicable immigration detention authority for all applicants for admission."

Doc. no. 13 at 3.

      The court's discussion proceeds as follows. First, the court will discuss the

fact that the government—both in 2023 when it released Jimenez and in 2025 when

it rearrested him—has taken the position that it is acting under the authority

granted by § 1226, not § 1225. Second, the court will explain why the mandatory detention regime set forth in § 1225(b)(1) is inapplicable. Third, given the government's assertion that § 1225 is the applicable immigration detention authority for all applicants for admission, the court will explain why § 1225(b)(2) does not apply either.[5]

A.    The Government Consistently Represented That it Was Proceeding Under § 1226

First, while the government argues that Jimenez is presently detained under § 1225(b), that argument ignores the statutory authority that the government itself relied on for Jimenez's initial release and his recent arrest. Jimenez's initial release from DHS's confinement in August 2023 was pursuant to an "Order of Release on Recognizance" stating that Jimenez was being released under § 1226. Doc. no. 13-3 at 1. Then, when DHS rearrested Jimenez in July 2025, that arrest was pursuant to an administrative warrant issued under § 1226. See doc. no. 13-6 at 1. "The abstract statutory interpretation issues raised by this case must be considered against the backdrop of [the] uncontestable fact" that, from the time of his release in 2023, Jimenez "has always been treated by [the government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225." Romero v. Hyde, --- F. Supp. 3d ----, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025); see also Gomes v. Hyde, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *5, *8 (D. Mass. July 7, 2025) (concluding that noncitizen originally detained under

_____

[5] The court recognizes that the government's contention in the instant case is largely confined to an argument that Jimenez is properly detained under § 1225(b)(1).

§ 1225(b) but released on conditional parole under § 1226 and later rearrested on a § 1226 warrant was entitled to bond hearing under § 1226 and its implementing regulations).

The government's reliance on Matter of Q. Li, 29 I. & N. Dec. 66 (B.I.A. 2025), is misplaced. There, the noncitizen was arrested without a warrant less than 100 yards into the interior of the United States after unlawfully crossing the border. 29 I. & N. Dec. at 67. She was thereafter released on a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Id. Two years later, DHS arrested her without a warrant and issued her a notice to appear in removal proceedings, which rescinded her humanitarian parole. Id.; see 8 C.F.R. § 212.5(e)(2)(i). Termination of her humanitarian parole required that she be "returned to the custody from which [she] was paroled," which, in Q. Li's case, was § 1225(b)(2). § 1182(d)(5)(A); Q. Li, 29 I. & N. Dec. at 70-71.

Here, Jimenez was released on conditional parole under § 1226(a), not humanitarian parole under § 1182(d)(5)(A). Thus, the provision of § 1182(d)(5)(A) relied upon in Q. Li—providing that revocation of humanitarian parole returns the noncitizen to the custody from which they were paroled—is inapplicable. Moreover, Jimenez's 2025 arrest was not a warrantless arrest conducted under any provision of § 1225(b). To the contrary, it was pursuant to a warrant expressly issued under the authority conferred upon DHS by § 1226(a). Thus, Q. Li is inapposite. See Gomes, 2025 WL 1869299, at *7-8 (finding Q. Li's reasoning inapplicable to

noncitizens released on conditional parole under § 1226 and later rearrested on a § 1226 warrant).

To the extent the government reads Q. Li as holding that, once a noncitizen is initially detained at or near the border under § 1225(b), any subsequent re-detention is necessarily under § 1225(b) as well, the court does not share the government's interpretation. While the B.I.A. opined in a footnote that "DHS cannot convert the statutory authority governing" a noncitizen's detention from § 1225(b) to § 1226(a) "through the post-hoc issuance of a warrant," 29 I. & N. Dec. at 69 n.4, that footnote "is best read to address only the situation where a noncitizen is arrested without a warrant pursuant to Section 1225(b) and remains continually detained," Gomes, 2025 WL 1869299, at *8 n.9. Indeed, the B.I.A. stated that DHS cannot convert the statutory authority for a noncitizen's arrest "[o]nce an alien is detained under" § 1225(b) because "[t]he regulation implementing DHS's authority to conduct arrests under section [1226(a)] authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued." Q. Li, 29 I. & N. Dec. 69 n.4 (emphasis added) (citing 8 C.F.R. § 236.1(b)(1)). The B.I.A. also noted that, in Jennings, the Supreme Court stated that a § 1226 warrant "is one 'leading to the [noncitizen's] arrest.'" Id. (emphasis added) (quoting Jennings, 583 U.S. at 302). Here, where Jimenez was released from custody under § 1225(b)(1) in August 2023 pursuant to a grant of conditional parole under § 1226 and subsequently arrested

on a § 1226 warrant nearly two years later, Q. Li does not support the proposition

that Jimenez's present confinement is justified by § 1225(b).[6]

> B.    Section 1225(b)(1) Is Inapplicable

The government nevertheless maintains that § 1225 applies to all "applicants

for admission" and that, regardless of the warrant, Jimenez is properly detained

under § 1225(b)(1). That cannot be so, however, because § 1225(b)(1) only mandates

the detention of applicants for admission who are "arriving in the United States."

As of July 2025, Jimenez was no longer "arriving in the United States"—he had

been living here for nearly two years. Under the INA's implementing regulations,

an "arriving alien" is "an applicant for admission coming or attempting to come into

the United States." 8 C.F.R. 1.2 (emphasis added). While the court is not required to

defer to an agency's construction of § 1225(b), Loper Bright Enters. v. Raimondo,

603 U.S. 369, 394 (2024), that definition accords with the plain meaning of the

phrase "arriving in the United States." See Martinez v. Hyde, --- F. Supp. 3d ----,

2025 WL 2084238, at *6 (D. Mass. July 24, 2025) ("The use of the present

progressive 'arriving,' rather than the past tense 'arrived,' implies some temporal or

geographic limit." (quoting Matter of M-D-C-V-, 28 I. & N. Dec. 18, 23 (B.I.A.

2020))).

---

[6] But to the extent Q. Li can be read to suggest that Jimenez continues to be subject to mandatory detention under § 1225(b), this court disagrees with that conclusion for the reasons explained in the rest of this order. "[C]ourts must exercise independent judgment in determining the meaning of statutory provisions," and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394, 413 (2024).

Moreover, § 1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process. §§ 1225(b)(1)(A)(i), (B)(ii)-(iii). However, Jimenez is not in expedited removal proceedings. He is in standard removal proceedings under § 1229a before an immigration judge pursuant to the Notice to Appear issued in August 2023. Coal. for Humane Immigrant Rts. v. Noem, No. 25-cv-872 (JMC), 2025 WL 2192986, at *3-6 (D.D.C. Aug. 1, 2025) (contrasting expedited removal proceedings from standard removal proceedings).

As for Jimenez's application for asylum, § 1225(b)(1)(B)(ii) provides that a noncitizen arriving the United States "shall be detained for further consideration of the application for asylum" if the asylum officer conducting the credible fear interview "determines at the time of the interview that [the noncitizen] has a credible fear of persecution." Here, the asylum officer did not find that Jimenez had a credible fear of persecution. To the contrary, the asylum officer found that Jimenez lacked a credible fear of persecution, and Jimenez appealed that determination to an IJ. Because § 1225(b)(1)(B)(ii) requires a determination from the asylum officer "at the time of the [credible fear] interview" that the noncitizen has a credible fear, it cannot justify Jimenez's mandatory detention.[7]

---

[7] For this reason, the court is not persuaded by the government's reliance upon Matter of M-S-, 27 I. & N. Dec. 509 (U.S. Atty. Gen. 2019). In that case, the noncitizen was found to have a credible fear by DHS at the interview stage. See 27 I. & N. Dec. at 514. To the extent M-S- can be read to interpret § 1225(b)(1)(B)(ii) as requiring the detention of noncitizens transferred from expedited to full removal proceedings even when the asylum officer finds at the time of the interview that the noncitizen lacks a

Finally, § 1225(b)(1)(B)(iii)(IV) cannot justify Jimenez's detention without a bond hearing. That provision provides that, if a noncitizen arriving in the United States appeals an asylum officer's determination at the interview stage that the noncitizen lacks a credible fear of persecution, the noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV). In this case, the IJ rendered a final determination as to Jimenez's credible fear of persecution in August 2023, concluding that he had a credible fear. Because a final determination of credible fear has been rendered, this provision does not apply either.

For all of these reasons, § 1225(b)(1) supplies no authority for Jimenez's present confinement. If Jimenez's mandatory detention without a bond hearing could be justified by either subsection of § 1225(b), it could only be justified by § 1225(b)(2).

### C.    Section 1225(b)(2) Is Inapplicable

Determining whether § 1225(b)(2) may justify Jimenez's present detention requires the court to interpret § 1225(b)(2). The court's starting point is the statute's plain language, and "where the plain language of a statute is clear, it governs." One Nat'l Bank v. Antonellis, 80 F.3d 606, 615 (1st Cir. 1996). But that plain language is not viewed "in a vacuum"; instead, the court "read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" 289

---

credible fear, the court finds that M-S- misconstrues § 1225(b)(1)(B)(ii)'s plain language and is not persuasive. See Loper Bright, 603 U.S. at 386.

Kilvert, LLC v. SBC Tower Holdings LLC, 133 F.4th 1, 5 (1st Cir. 2025) (quoting

Sturgeon v. Frost, 577 U.S. 424, 438 (2016)). Moreover, it is "a cardinal principle of

statutory construction" that a statute be interpreted so that "no clause, sentence or

word [is rendered] superfluous." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)

(quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). "The Court may also look to

the structure of the statutory scheme, the context surrounding the statutory

provision, any relevant legislative history, and Congress's purpose in enacting the

statute." Gomes, 2025 WL 1869299, at *6. And "the longstanding practice of the

government" can also be relevant in determining a statute's meaning, especially

when the government's practice developed "roughly contemporaneously with

enactment of the statute and [has] remained consistent over time." Loper Bright,

603 U.S. at 386 (quoting NLRB v. Noel Canning, 573 U.S. 513, 525 (2014)).

    1.   <u>Plain Language</u>

    As discussed, § 1225(b)(2) provides that, if an "examining immigration

officer" concludes during an "inspection" of an "applicant for admission" who is

"seeking admission" that the person "is not clearly and beyond a doubt entitled to be

admitted," then "the [noncitizen] shall be detained for a proceeding under section

1229a of this title," i.e., a standard removal proceeding. § 1225(b)(2)(A). Thus, for

§ 1225(b)(2)'s mandatory detention regime to apply, several requirements must be

met: (1) an "examining immigration officer" (2) must conclude during an

"inspection" (3) of an "applicant for admission" (4) who is "seeking admission" (5)

that the person "is not clearly and beyond a doubt entitled to be admitted."

§ 1225(b)(2)(A).

As the government reads the statute, § 1225 is the applicable statute governing the detention of all "applicant[s] for admission"—i.e., anyone present in the country who has not been admitted. But that interpretation reads out the other four requirements of § 1225(b)(2)(A).

With respect to the requirements that the "examining immigration officer" conduct an "inspection" of the person, "'examination' is not an unbounded concept. Rather, it is the specific legal process one undergoes while trying to enter the country." Romero, 2025 WL 2403827, at *9; see also 8 C.F.R. § 235.1(a) (contemplating that the "[s]cope of examination" includes consideration of an "[a]pplication to lawfully enter the United States"); 8 U.S.C. § 1225(a)(3) ("All [noncitizens] who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."). "[N]ot every encounter with an immigration officer necessarily constitutes an examination [or inspection] under section 1225." Martinez, 2025 WL 2084238, at *3.

The government's assertion that § 1225 applies to all applicants for admission would also read out of § 1225(b)(2)(A) the requirement that the noncitizen be "seeking admission." This phrase, to the extent possible, must be given meaning independent of the requirement that the person be an applicant for admission. TRW, 534 U.S. at 31. As noted, an "applicant for admission" is defined in pertinent part as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "In other

words, to be an 'applicant for admission,' one must actually be here, either in the United States or at its door." Romero, 2025 WL 2403827, at *9. "By contrast, one can 'seek admission' from anywhere in the world, 'for example, by applying for a visa at a consulate abroad.'" Id. (quoting Matter of Lemus-Losa, 25 I. & N. Dec. 734, 741 (B.I.A. 2012)).

The INA defines "admission" and "admitted" to mean, "with respect to [a noncitizen], the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). While an applicant for admission has not been "admitted" to the United States, "it does not follow that [an applicant for admission] continues to be actively 'seeking' . . . lawful entry." Lopez Benitez v. Francis, --- F. Supp. 3d ----, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025). Here, for example, Jimenez is considered an "applicant for admission" under the INA because he is present in the United States but he has not been admitted. But there is no indication he is presently "seeking admission"; i.e., seeking "lawful entry . . . into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A) (emphasis added). To the contrary, Jimenez "has already 'entered' the country"—he is no longer seeking to enter the United States (lawfully or otherwise). Lopez Benitez, 2025 WL 2371588, at *6. And while Jimenez has applied for asylum, that application does not seek "'lawful entry' to the United States, but [rather] a lawful means to remain here." Id. at *6 n.7. Because § 1225(b)(2)(A) applies to applicants for admission who are

19

seeking to enter the United States, it cannot apply to Jimenez, who has already entered the country and has been residing here for over two years.

### 2. Overall Statutory Scheme

Application of § 1225(b)(2) to Jimenez would also be inconsistent with the overall statutory scheme governing detention of noncitizens pending removal. As already discussed, "[s]ection 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." Jennings, 583 U.S. at 288-89. Section 1225(b), by contrast, generally applies "at the Nation's borders and ports of entry" to noncitizens "seeking to enter the country." Id. at 287. But if the government's interpretation is correct—that all applicants for admission are subject to mandatory detention under § 1225(b)—"then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply." Lopez Benitez, 2025 WL 2371588, at *8.

The government's assertion is in significant tension with the provisions of § 1226. Although that statute generally establishes a discretionary detention regime, § 1226(c) precludes release on bond for certain categories of noncitizens. See § 1226(c)(1). For example, release on bond is precluded for any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)." § 1226(c)(1)(A). "As the Supreme Court has recognized, when Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez, 779 F. Supp. 3d at 1256-57 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393,

400 (2010)). That Congress specifically carved out categories of inadmissible noncitizens from § 1226(a)'s discretionary detention framework logically implies that Congress intended inadmissible noncitizens outside of those categories such as Jimenez to come within that framework. See id.

What is more, the government's assertion would render a recent amendment to § 1226(c) superfluous. Earlier this very year, Congress added an additional category to § 1226(c): noncitizens who are inadmissible by virtue of being "present in the United States without being admitted or paroled" who commit specified criminal offenses while in the United States. §§ 1226(c)(1)(E); 1182(a)(6)(A). But if all such persons were already subject to mandatory detention under § 1225(b)(2)(A), then § 1226(c)(1)(E) would be meaningless. "When Congress acts to amend a statute, [courts] presume it intends its amendments to have real and substantial effect." Rodriguez, 779 F. Supp. 3d at 1259 (quoting Stone v. I.N.S., 514 U.S. 386, 397 (1995)); see also Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

    3.  History and Context

    "[C]ontemporaneous, consistent interpretations of a statute by the Executive agency charged with its administration can provide useful guidance." Martinez, 2025 WL 2084238, at *8 (citing Loper Bright, 603 U.S. at 385-86). Until July 2025, DHS interpreted § 1226 to apply to persons present in the country who have not

been admitted.[8] Id. at *4 & n.9 (citing Transcript of Oral Argument at 44:24-45:2,

Biden v. Texas, 597 U.S. 785 (2022) (No. 21-954) ("[Solicitor General]: DHS's long-

standing interpretation has been that 1226(a) applies to those who have crossed the

border between ports of entry and are shortly thereafter apprehended.")). Over the

approximately twenty years from when § 1226 was enacted as part of the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to July of

this year, DHS took the position that, "[d]espite being applicants for admission,

[noncitizens] who are present without having been admitted or paroled . . . will be

eligible for bond and bond redetermination." 62 Fed. Reg. 10312-01, 10323 (Mar. 6,

1997). The government's failure, across multiple administrations, to assert that

§ 1225(b) gives it the power to detain without a bail hearing everyone who

unlawfully entered the country is "significant in determining whether such power

was actually conferred." West Virginia v. EPA, 597 U.S. 697, 725 (2022) (quoting

FTC v. Bunte Bros., Inc., 312 U.S. 349, 352 (1941)).

 The legislative history surrounding § 1226's passage supports the

government's previously longstanding interpretation. "Before IIRIRA passed, the

predecessor statute to Section 1226(a) governed deportation proceedings for all

noncitizens arrested within the United States." Rodriguez, 779 F. Supp. 3d at 1260

---

 [8] DHS's recent about-face has generated a near-uniform body of district court caselaw in recent months rejecting the government's novel interpretation of its detention authority under § 1225(b). See Romero, 2025 WL 2403827, at *1 (collecting cases). The court has been able to locate only one case where a district court has agreed with the government. See Pena v. Hyde, Civ. No. 25-11983-NMG, 2025 WL 2108913, at *1-2 (D. Mass. July 28, 2025).

(citing 8 U.S.C. § 1252(a)(1) (1994)). Under that statute, the Attorney General had the discretion to arrest and detain or release on bond or conditional parole a noncitizen against whom deportation proceedings had commenced "pending such final determination of deportability." § 1252(a) (1994). Congressional reports issued in connection with IIRIRA's passage demonstrate congressional intent for the newly enacted § 1226 to "restate[ ] the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond [a noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. I, at 229 (1996); accord H.R. Rep. No. 104-828, at 210 (1996). In other words, Jimenez would have been subject to a discretionary detention framework under § 1226's predecessor, and the Congress's intent in enacting § 1226 was to leave that framework intact. Rodriguez, 779 F. Supp. 3d at 1260.

"Finally, the idea that a different detention scheme would apply to non-citizens 'already in the country' as compared to those 'seeking admission into the country' is consonant with the core logic of our immigration system." Martinez, 2025 WL 2084238, at *8 (quoting Jennings, 583 U.S. at 289). "The distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas v. Davis, 533 U.S. 678, 693 (2001); accord Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." (emphasis added)). This historic

distinction between noncitizens present in our country versus those outside or at the threshold of entry makes it even less likely that Congress intended § 1225(b) to apply to noncitizens present in the United States. Martinez, 2025 WL 2084238, at *8.

## CONCLUSION

For the foregoing reasons, Jimenez has a clear case on the law and facts with respect to Count II of his amended petition.[9] Jimenez is presently detained under § 1226, and his continued detention without a bond hearing before an IJ is unlawful. Because Jimenez has a clear case on the law and facts, this court exercised its inherent authority to hold a bail hearing.


_____
Landya McCafferty
United States District Judge


September 8, 2025

cc: Counsel of Record


---

[9] Though neither party has cited to it, the court recognizes that the Board of Immigration Appeals held on September 5, 2025, that § 1225(b)(2)(A) applies to all applicants for admission. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (B.I.A. 2025). For the reasons explained in this decision, the court is not persuaded by the B.I.A.'s analysis in that case.